IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RODNEY LEE,<br><br>        Plaintiff,<br><br>  v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>17-3800 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

In this action, pro se Plaintiff Rodney Lee alleges that Defendant Ocwen Loan Servicing, LLC ("Ocwen"), through its attorney at Udren Law Offices, P.C. ("Udren Law"), illegally used false, deceptive, and/or misleading representations or means to collect a purported debt owed to Ocwen in violation of the New Jersey Fair Foreclosure Act ("NJFFA"), N.J.S.A. § 2A:50-53, et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. [Docket Item 1.] Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Item 3.] Plaintiff opposed Defendant's motion [Docket Item 4], and Defendant filed a reply brief. The motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendant's motion will be granted. The Court finds as follows:

1.  **Factual and Procedural Background**.[1] On August 6, 2007, Plaintiff executed and delivered a note to REMI Capital, Inc. ("REMI") in the amount of $224,000.00 for a property located at 263 North 6th Street in Newark, New Jersey. [Ex. E to Docket Item 1.] To secure the note, Plaintiff executed and delivered a mortgage to REMI, which was recorded in the office of the Clerk of Essex County on February August 22, 2007. [Ex. F to Docket Item 1.] REMI subsequently sold and physically transferred the promissory note to Defendant Ocwen on April 28, 2016. [Ex. C to Docket Item 1 at ¶¶ 4-5.]

2.  On July 1, 2009, Plaintiff defaulted on his loan obligations. [Id. at ¶¶ 8-9.] On June 15, 2016, Defendant Ocwen,

---

[1] The facts alleged are drawn from the Complaint, from public court documents, and from undisputedly authentic documents upon which Plaintiff explicitly relies in his Complaint. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because the Complaint is predicated upon the mortgage documents, correspondence between Defendant and Plaintiff regarding the mortgage, and the foreclosure actions in state court, documents related to these matters submitted by both Plaintiff and Defendant will be considered in connection with the pending motions to dismiss. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); see also Farah v. Lasalle Bank Nat'l Ass'n, 2016 WL 1162644, at *5-6 (D.N.J. Mar. 23, 2016) (stating that "records of the foreclosure action that are intrinsic to the complaint may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment") (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)).

through its foreclosure counsel at Udren Law, sent Plaintiff a Notice of Intention to Foreclose (hereafter, "the NOI Letter"). [Ex. B to Docket Item 1.] Defendant Ocwen subsequently filed a foreclosure action in the Superior Court of New Jersey, Chancery Division, Essex Count, under Docket No. F-030760-16. [Docket Item 3-4.] On December 28, 2017, the Superior Court entered final judgment in favor of Ocwen in the sum of $426,495.22. [Docket Item 7 at 3-9.] Plaintiff appealed the final judgment,[2] but no stay of the final judgment had been issued as of February 8, 2018. [Id. at 1.]

3. On May 24, 2017, Plaintiff filed the Complaint in the instant action alleging that Defendant Ocwen violated the FDCPA and the NJFFA.[3] [Docket Item 1.] According to Plaintiff, Ocwen neither made Plaintiff's mortgage nor held Plaintiff's mortgage at the time the NOI Letter was sent to Plaintiff in June 2016,

---

[2] The appeal is captioned as Ocwen Loan Servicing, LLC v. Rodney O. Lee, Case No. A-002113-17 (N.J. Super. Ct. App. Div., filed Jan. 10, 2018).

[3] In addition to this case, Plaintiff has filed several similar suits in federal court against various lenders alleging violations of the FDCPA. See Lee v. Bayview Loan Servicing, LLC, No. 17-3517 (D.N.J.); Lee v. Udren Law Offices, P.C., No. 17-3801 (D.N.J.); Lee v. Phelan Hallinan & Diamond, P.C., 17-3902 (D.N.J.); Lee v. OneWest Bank, FSB, No. 17-4135 (D.N.J.); Lee v. Powers Kirn, LLC, No. 17-4569 (D.N.J.), Lee v. U.S. Bank Home Mortgage, No. 17-4570 (D.N.J.); Lee v. Fein, Such, Kahn & Shepard, P.C., No. 17-3516 (D.N.J.); Lee v. Nationstar Mortgage, No. 17-4433 (D.N.J.).

3

thereby rendering the NOI Letter sent by Udren Law deficient. [Id. at ¶ 20.] Because Defendant Ocwen relied on the NOI letter in accelerating the mortgage and bringing the underlying foreclosure action, Plaintiff alleges that Defendant, through its attorney at Udren Law, impermissibly made the "false, deceptive, and/or misleading representation that [Ocwen] was in compliance of N.J.S.A. 2A:50-56 prior to its filing [of the foreclosure complaint]." [Id. at ¶ 17.] Plaintiff further alleges that, by moving for summary judgment in the state foreclosure action without demonstrating that Ocwen is a "residential mortgage lender" or "lender" as defined by N.J.S.A. § 2A:50-56(c), Defendant Ocwen continued to violate the FDCPA after filing the initial foreclosure action. [Id. at ¶ 24-26.]

4. **Standard of Review**. Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (internal citations omitted). In applying this standard to pro se pleadings and other submissions, as here, the Court must liberally construe the well-pleaded allegations, and draw all reasonable inferences in favor of the pro se litigant. Higgs v. Attorney Gen. of the

4

U.S., 655 F.3d 333, 339 (3d Cir. 2011); Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184 (3d Cir. 2009). Despite this liberality, however, a pro se complaint must still "contain sufficient factual matter, accepted as true," to "state a [plausible] claim to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Marley v. Donahue, 133 F. Supp. 3d 706, 714 (D.N.J. 2015) (explaining the same concept).

5. Because Plaintiff asserts a claim under the FDCPA, a federal statute, the Court exercises jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a), as well as 15 U.S.C. § 1692k(d). The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

6. **Discussion**. Defendant argues that Plaintiff's claims should be dismissed for several reasons: (1) Plaintiff's claims are barred by New Jersey's entire controversy doctrine; (2) the Court lacks jurisdiction over Plaintiff's claims under the Younger and/or Colorado River abstention doctrines; (3) New Jersey's litigation privilege, which protects attorneys from civil liability based on conduct and statements made in litigation, applies; and (4) there is no private right of action under the NJFFA.

7. After reviewing the Complaint and court documents in the state foreclosure action, including the final judgment

5

issued by the Superior Court on December 28, 2017, the Court finds that the entire controversy doctrine applies to this federal action. Since Plaintiff's claims cannot proceed on this basis, the Court declines to reach Defendant's other arguments for dismissal.

8. <u>Entire Controversy Doctrine</u>. New Jersey's entire controversy doctrine precludes this Court from considering Plaintiff's case. The entire controversy doctrine, codified in Rule 4:30A of the New Jersey Court Rules, "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court." <u>Cogdell v. Hosp. Ctr. at Orange</u>, 560 A.2d 1169, 1172 (N.J. 1989). The doctrine requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts. <u>See</u> <u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132 (3d Cir. 1999) (New Jersey's entire controversy doctrine "requires adversaries to join all possible claims stemming from an event or series of events in one suit."). The doctrine applies in federal courts where there was a previous state-court action involving the same transaction. <u>See</u> <u>Rycoline Prods., Inc. v. C & W Unlimited</u>, 109 F.3d 883, 887 (3d Cir. 1997).

9. The application of the entire controversy doctrine turns on three criteria: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Venner v. Bank of Am., 2009 WL 1416043, at *2 (D.N.J. May 19, 2009) (quoting Watkins v. Resorts Int'l Hotel and Casino, Inc., 591 A.2d 592, 599 (N.J. 1991)). "It is [a] commonality of facts, rather than the commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine." DiTrolio v. Antiles, 662 A.2d 494, 504 (N.J. 1995). Importantly, the doctrine "bars not only claims that were brought in the previous action, but also claims that could have been brought." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008).

10. With respect to foreclosure actions, specifically, the entire controversy doctrine requires that all "germane" claims must be joined in the first action or they are forever barred. N.J. Ct. R. 4:64-5. "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the

7

foreclosure action." In re Mullarkey, 536 F.3d at 229. In other words, any claim challenging the foreclosure-plaintiff's "right to foreclose" is "germane" to a foreclosure action and must be raised there. Sun NLF Ltd. v. Sasso, 713 A.2d 538, 540 (N.J. App. Div. 1988). Thus, this Court recently held that N.J. Ct. R. 4:65-5 and the entire controversy doctrine encompass all statutory, common law, and constitutional claims relating to a foreclosure action and the underlying mortgage or tax transaction that led to the foreclosure. Bembry v. Twp. of Mullica, 2017 WL 3033126, at *3 (D.N.J. July 17, 2017).

    11.  Here, Plaintiff is essentially challenging the accuracy of the NOI Letter he received on June 15, 2016 and arguing that the Superior Court foreclosure action and summary judgment motion, which relied on the NOI Letter, violated the FDCPA and NJFFA. Such claims undoubtedly arise out of the same transactions or series of transactions that were the basis of the foreclosure action. See Zebrowski v. Wells Fargo Bank, N.A., 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) ("[A]ny conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure.") (quoting Sun NLF Ltd. P'ship v. Sasso, 713 A.2d 538, 540 (N.J. Super. Ct. App. Div. 1998); see also Hua, 2015 WL

5722610, at *5 (finding plaintiff's FDCPA claims were germane to the state foreclosure proceedings because they were premised on whether defendants had the right to foreclose on plaintiff's debt, and if so, the amount of money owed); Venner, 2009 WL 1416043, at *3 (finding plaintiff's FDCPA claims were germane to the state foreclosure proceedings because they were based on the same alleged transaction).

12. Indeed, Plaintiff raised nearly identical standing-related claims and arguments in the Superior Court on at least six different occasions: (1) his Answer filed on December 26, 2016 [Ex. 3 to Docket Item 3]; (2) his motion to compel production of certain documents filed on March 9, 2017 [Ex. 4 to Docket Item 3]; (3) his objection to Defendant's motion for summary judgment filed on May 12, 2017 [Ex. 6 to Docket Item 3]; (4) his motion to dismiss filed on June 27, 2017 [Ex. 8 to Docket Item 3]; (5) his motion for reconsideration filed on July 18, 2017 [Ex. 9 to Docket Item 3]; and (6) his cross-motion to dismiss filed on September 6, 2017. [Ex. B to Docket Item 5.]

13. For these reasons, Plaintiff's present claims are barred by the New Jersey entire controversy doctrine because they were raised or could have been raised in the foreclosure action that has been concluded in state court.

14. <u>Other Possible Bases for Dismissal</u>. Because the Court finds that the entire controversy doctrine applies, the Court

declines to reach Defendant's other arguments for dismissal. Cf. Destefano v. Udren Law Offices, P.C., 2017 WL 2812886, at *5 (D.N.J. June 29, 2017) (declining to reach other possible bases for dismissal after finding that plaintiff's claim was time-barred).

15. **Conclusion.** For the foregoing reasons, the Court will grant Defendant's motion to dismiss. Because amending the Complaint could not overcome the entire controversy doctrine, any amendment would be futile. See Mason v. US Bank, 2016 WL 7189828, at *6 (D.N.J. Dec. 12, 2016). Accordingly, the dismissal will be with prejudice. An accompanying Order shall be entered.

| | |
|---|---|
| **February 15, 2018** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE<br>U.S. District Judge |